# Federal Defenders
## OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

*Southern District of New York*
Jennifer L. Brown
*Attorney-in-Charge*

November 20, 2019

**BY ECF AND HAND DELIVERY**

Honorable J. Paul Oaken
United States District Judge
Southern District of New York
40 Foley Square, Room 2101
New York, New York 10007

> **Re:  United States v. Todd Capser**
> **Docket No. 19 Cr. 337**

Dear Judge Oaken:

Forty-eight year old Todd Capser is a life-long resident of Montana where he earned a reputation as a hard-working honest family man. However, in 2016, when he was desperate to finance his start-up business and shortly after going through a divorce, for the first time in his life, he committed a fraud. He applied for and received a $43 million dollar loan by filing an application misrepresenting his collateral. To refinance that loan at a lower interest rate, he applied for a second loan, which did not materialize.

Capser confessed both to the Financial Institution that granted the loan, Third Eye Capital (TEC) and federal agents. Both confessions occurred before Capser was criminally charged. Shortly after he was indicted, he accepted responsibility for his conduct by pleading guilty under a plea agreement stipulating a Guideline range of 121 to 151 months. Probation has recommended a downward variance to 84 months. However, since TEC has recovered property and income worth more than $43 million loan, a greater downward variance is warranted.

**BACKGROUND**

Capser, who was born in 1971, received most of his education in Montana, where he completed 7 semesters of college. PSR___. A semester shy of obtaining his college diploma, Capser joined the campaign staff of a congressional candidate. PSR 96; Exhibit A. He then worked initially on the campaign of Montana Senator Conrad Burns, PSR ¶¶ 95-97, and between 2003 and 2007 was chief

Honorable J. Paul Oaken                    Page 2
United States District Judge               November 21, 2019
Southern District of New York

     **Re:**  **United States v. Todd Capser**
         **Docket No. 19 Cr. 337**

of staff for Senator Burns. PSR ¶ 93; Exhibit B. From 2007 to
2015, Capser was employed by AE Biofuels, where he was promoted
to Vice President of Development, earning about $10,000 monthly.

Despite his steady employment and good salary, in 2015 he
decided to pursue his dream of starting a company to purchase
merchant tankers. For the initial year, he was living off his
personal savings as well as paying his ex-wife $5,500.00 per
month in maintenance and child support. Because the purchase of
the tankers was delayed and his partners no longer could
participate in financing the project, he became desperate to save
his start-up company. To do so, he applied for the loan involved
in this case.

In October 2016, he purchased two tankers for $41,900,000.
TEC charged a closing fee of $830,000, and Capser spent
approximately $500,000 to upgrade the tankers. The entire loan
was spent on this project.

**FAMILY**

Capser is the devoted father of three children: 16-year-old
Camden, 14-year-old Graycyn and 11-year-old Andalyn. Capser has
joint custody of the children, who primarily reside with Capser's
ex-wife. He currently pays about $3,000 per month in child
support. His ex-wife is remarried.

According to Capser's son, Capser has been "my mentor and
best friend my whole life" Exhibit C. Not only is Capser a
devoted father, but he is active in his community. Exhibit D.
And, according to the Principal of Billings Central Catholic High
School, "Todd has spent many years in the Billings Community
giving back, primarily volunteering to improve the lives of
children and young adults in our community . . ." Exhibit D.



Honorable J. Paul Oaken
United States District Judge
Southern District of New York

Page 3
November 21, 2019

Re: __United States v. Todd Capser__
    __Docket No. 19 Cr. 337__



## THE $43.3 MILLION LOAN FROM TEC

Capser purchased two merchant tankers in October 2016. To
finance the purchase Capser received a $43.3 million loan. The
vessels were purchased for $41,900,000 with a 5 year charter
attached to each vessel. There was a 2% closing fee, or $830,000
charged by TEC and approximately $500,000 was spent to upgrade
the vessels.

Both vessels came with a fine year charter which paid
$17,000 per day for the two vessels. Exhibit G, Page 2, box 22.
When Capser's fraud was uncovered in November 2016, TEC took over

Honorable J. Paul Oaken
United States District Judge
Southern District of New York

Page 4
November 21, 2019

Re:  **United States v. Todd Capser**
     **Docket No. 19 Cr. 337**

both vessels and received the charter fees as well as ownership
of both vessels.

If both boats are sold by TEC in 2020, their assessed
combined value is $31,000,000. Exhibit H. Based on the charter
earnings between November 2016 and October 2019, TEC has earned
$18,649,584. The remaining term of the charter would result in an
additional $8,878,625 for a total return to TEC of $58,528,209.
The total interest Capser would have owed between November 2016
and November 2018 would have been $15,215,546. Thus, TEC would
have a profit of $12,663. Exhibit I.

On the assumption that TEC kept possession of the vessels
for the entire 5-year charter and then sold the vessels, TEC
would make a profit (above principal and interest) of $17,500.
Exhibit J.

**ARGUMENT**

In selecting a sentence, this Court takes as its "lodestar
the parsimony clause of 18 U.S.C. § 3553(a)." United States v.
Douglas, 713 F.3d 694, 700 (2d Cir. 2013). That provision directs
sentencing court to "impose a sentence sufficient, but not
greater than necessary, to comply with' the factors set out in 18
U.S.C. § 3553(a)(2)," namely, "proportionality, deterrence,
incapacitation, and rehabilitation." Id. See also, e.g., United
States v. Ministro-Tapia, 470 F.3d 137, 142 (2d Cir. 2006).

"[D]istrict courts may impose sentence within statutory
limits based on appropriate consideration of all the factors
listed in § 3553(a)." Pepper v. United States, 132 S.Ct. 1229,
1241 (2011). The Guidelines range is one such factor, but it is
only one, and "the sentencing Guidelines are just that,
guidelines, and . . . 'they truly are advisory.'" Douglas, 713
F.3d at 700 (quoting United States v. Cavera, 550 F.3d 180, 189
(2d Cir. 2008)(en banc). If a district court finds two sentences
equally serve the purpose of § 3553, under the parsimony command,
it must impose the lower sentence. Ministro-Tapia, 470 F.3d at
142.

To a substantial extent, the fraud Guideline range in this
case is driven by the loss amount: about $43 million for the
actual loan and $50 million of intended loss on the unsuccessful

Honorable J. Paul Oaken                    Page 5
United States District Judge                November 21, 2019
Southern District of New York

    **Re:**  **United States v. Todd Capser**
        **Docket No. 19 Cr. 337**

effort to obtain a second loan, to refinance the first loan. As a
result, the base offense level of 7 is enhancement by 24 levels.
PSR ¶ ___. But, as observed in United States v. Adelson, 441
F.Supp.2d 506, 514 (S.D.N.Y. 2006), there is an absence of any
empirical data demonstrating the penalogical value of the
substantial increase in sentence severity for fraud based on the
amount of loss. Thus, Stith and Cabranes, in Fear of Judging:
Sentence Guidelines in the Federal Courts, p. 69 (1998), write
"[B]ecause of their arithmetic approach and also in an effort to
appear objective [the Guidelines] tend to place great weight on
putatively measurable quantities, such . . . [the] amount of
financial loss in fraud cases, without, however, explaining why
it is appropriate to accord such huge weight to such factors."
See Adelson, 441 F.Supp.2d at 509.

    As noted in United States v. Gupta, 904 F.Supp.2d 349, 361
(S.D.N.Y. 2012), aff'd 747 F.3d 111 (2d Cir. 2014), the
Guideline's focus on the amount of monetary loss, effectively
ignores the many other factors contained in 18 U.S.C. § 3553(a)
and may be irrational on its face. Similar concerns were
expressed by Judge Gleeson in United States v. Ovid, 2010 No. Q9-
CR-216, 3940724 (E.D.N.Y. 2010) (Fair sentences can drift quite
far away the advisory range).

    The illogic of making the sentence turn on he sum of the
money loans is illustrated by the unusual facts of this case.
Although TEC loaned Capser $43 million, not only is there no
monetary loss in a real sense, but TEC' return from the charter
agreement is more than the interest would have been. When the
charter fees are added to the assessed value of the vessels, they
will make a profit. Unlike a victim whose savings have been
dissipated by the fraud, there has been no financial impact on
the victim in this case.



Honorable J. Paul Oaken                   Page 6
United States District Judge               November 21, 2019
Southern District of New York

  **Re:**  **United States v. Todd Capser**
    **Docket No. 19 Cr. 337**

██████████████████████████████████        ███████████

   Harsher punishment does not generally result in greater
deterrence. As Michael Tonry concludes in his article summarizing
studies of punishment and deterrence, "certainty and promptness
of punishment are more powerful deterrents than severity . . . .
Imaginable increases in severity of punishments do not yield
significant (if any) marginal deterrent effects." Michael Tonry,
Purposes and Functions of Sentencing, 34 Crime and Justice: A
Review of Research 28-29 (2006); see also United States v.
Beiermann, 599 F.Supp.2d 1087, 1103-04 (N.D. Iowa 2009)
("Experience in other criminal cases . . . surely does not
support the hope that harsh sentences will end illegal activity
. . . . [T]he sentence should not be longer simply to satisfy an
objective that, while laudable, is not being achieved according
to any empirical or other evidence in this case or, for that
matter, empirical evidence in any other case or source that I am
aware of.")

   As for deterrence, there are two relevant factors in this
case that support a variance. First, is the low rate of
recidivism for a person with no prior arrests. According to the
Sentencing Commission, alternatives to prison, often are more
effective in reducing recidivism than a straight prison term.
U.S.S.G., **Measuring Recidivism: The Criminal History Computation
of the Federal Sentencing Guidelines at p. 13, Release 1 (May
2004).** That is especially so with low risk non-violent offenders.
According to the Sentencing Commission 2016 study, defendants in
CHC I, have the lowest reconviction rate: 19.9%. Id. at ___.

   Second, Capser is 48 years old. The Sentencing Commission's
report on "Measuring Recidivism" concluded that recidivism rates
decline relatively consistently as age increases. And offenders
over 50 have a recidivism rate of 21.7%, compared with 67.6%
recidivism rate for offenders under 21. U.S. Sentencing
Commission, **Recidivism among Federal Offenders** (2016), pp. 5, 23.
The conclusion to the report notes that the predictive power of
the criminal history computation would be improved by taking an
offender's age into account. Id. at 16.

   As the attached letters attest, Capser has a history of
charitable contributions as well as a reputation as a good parent

Honorable J. Paul Oaken                    Page 7
United States District Judge               November 21, 2019
Southern District of New York

      Re:  **<u>United States v. Todd Capser</u>**
           **Docket No. 19 Cr. 337**

and friend. Exhibit K.

     Accordingly, a substantial downward variance is warranted in this case.

                          Respectfully submitted,

                           /s/
                          **PHILIP L. WEINSTEIN**
                          Assistant Federal Defender

PLW/ec

cc:  Benjamin W. Schrier, Esq.
     Assistant United States Attorney
     Southern District of New York
         (BY ECF)